**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | |
|---|---|
| **JENNIFER JANE CHAPA,** § | |
| § | |
| **Plaintiff,** § | |
| § | |
| v. § | Civil Action No. 4:20-cv-901-SDJ-KPJ |
| § | |
| **KILOLO KIJAKAZI,**[1] § | |
| *Acting Commissioner of Social Security*, § | |
| § | |
| **Defendant.** § | |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

Plaintiff Jennifer Jane Chapa ("Ms. Chapa") brings this appeal under 42 U.S.C. § 405(g) for judicial review of a final decision of the Commissioner of Social Security ("the Commissioner") denying her claim for disability insurance benefits. Having considered the briefs submitted by the parties and the administrative record, the Court recommends that the Commissioner's final decision be **AFFIRMED**.

## I.    APPLICABLE LAW

### A.    Sequential Evaluation Process

To qualify for disability benefits, a claimant must establish that he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a).

---

[1] Kilolo Kijakazi became the Acting Commissioner of the Social Security Administration on July 9, 2021, and is automatically substituted as the defendant in this action. FED. R. CIV. P. 25(d).

1

When considering a disability application, the Commissioner is required to use a five-step sequential evaluation process. 20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). At the first four steps of the evaluation process, the claimant must show: (1) the claimant is not engaged in "substantial gainful activity;" (2) the claimant has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and (3) the impairment(s) either meet or equal one of the Listings[2] of presumptively disabling impairments; or (4) the claimant is unable to perform his or her "past relevant work." 20 C.F.R. § 404.1520(a)(4)(i–iv); *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). If the claimant cannot show that his or her impairment meets or equals a Listing but proves that he or she is unable to perform his or her "past relevant work," the burden of proof shifts to the Commissioner, at step five, to show that the claimant is able to perform other work in the national economy, considering the claimant's residual functional capacity ("RFC"), age, education, and work experience. *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994); *Graves v. Colvin*, 837 F.3d 589, 592 (5th Cir. 2016) ("The burden of proof is on the claimant for the first four steps but shifts to the agency at step five; a finding at any step that a claimant is or is not disabled ends the analysis.").

### B. Standard of Review

The standard of review in a social security appeal is whether the Commissioner's final decision[3] "is supported by substantial evidence in the record and whether the proper legal standards were used in evaluating the evidence." *Bowling*, 36 F.3d at 434 (quoting *Villa*, 895 F.2d at 1022). If substantial evidence supports the Commissioner's findings and the correct legal

---

[2] 20 C.F.R. pt. 404, subpt. P, app. 1.

[3] The Court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which generally is the ALJ's decision, 20 C.F.R. § 416.1481, as it is in this case.

standards were applied, the Commissioner's decision stands, and the plaintiff is not entitled to relief. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pena v. Saul*, 846 F. App'x 308, 309 (5th Cir. 2021) (internal quotation marks omitted) (quoting *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994)). "[I]t must be more than a scintilla, but it need not be a preponderance." *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995) (quoting *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992)). Substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Bailey v. Saul*, 853 F. App'x 934, 935 (5th Cir. 2021) (quoting *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988)). The Court "may not reweigh the evidence in the record, nor try the issues *de novo*, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision." *Bowling*, 36 F.3d at 434 (quoting *Harrell*, 862 F.2d at 475). Rather, evidentiary conflicts are for the Commissioner to decide, and "if a decision is supported by substantial evidence, it must be affirmed even if there is contrary evidence." *Bailey*, 853 F. App'x at 935 (citing *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990)). However, the Court must do more than "rubber stamp" the decision; the Court must "scrutinize the record and take into account whatever fairly detracts from the substantiality of evidence supporting the [Commissioner's] findings." *Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985).

## II. BACKGROUND AND PROCEDURAL HISTORY

Ms. Chapa was born in 1966, completed high school, and worked as a preschool teacher, assistant daycare director, and daycare director.[4] *See* Tr. 56, 58–64, 80. On March 14, 2018, Ms. Chapa filed an application for Disability Insurance Benefits ("DIB"), alleging disability since August 18, 2017, due to complex regional pain syndrome ("CRPS"). *See* Tr. 81, 190–93. The Social Security Administration ("SSA") denied Ms. Chapa's claim initially on August 1, 2018, and upon reconsideration on September 25, 2018. *See* Tr. 106–09, 123–25. Thereafter, Ms. Chapa filed a written request for a hearing. *See* Tr. 126–27. On August 27, 2019, Administrative Law Judge Elizabeth B. Dunlap (the "ALJ") held a hearing. *See* Tr. 44–74. The hearing was attended by Ms. Chapa, her attorney, and a vocational expert. *See* Tr. 45.

On April 23, 2020, the ALJ issued an unfavorable decision denying Ms. Chapa's claim. *See* Tr. 28–39. In her decision, the ALJ found that Ms. Chapa met the insured status requirements of the Social Security Act (the "Act") through December 31, 2022. *See* Tr. 33. At step one, the ALJ found that Ms. Chapa had not engaged in substantial, gainful activity since August 18, 2017, her alleged onset date. *Id.* At step two, the ALJ found that Ms. Chapa had the following severe impairments: lumbar degenerative disc disease; status post surgical screw arthrodesis of right and left distal interphalangeal joints; history of CRPS of bilateral upper extremities; chronic pain syndrome; and bilateral thumb cysts. *Id.* At step three, the ALJ found that none of Ms. Chapa's impairments, alone or in combination, met or medically equaled a Listing. *See* Tr. 34. Because the ALJ found that none of the impairments met a Listing, the ALJ assessed Ms. Chapa's RFC. *See* Tr. 34–38. The ALJ found Ms. Chapa had the RFC to "perform the full range of sedentary work

---

[4] Documents 11-1 through 11-10 comprise the Administrative Record ("Tr."). When citing to the record, the Court cites to the Tr.'s internal pagination in the lower right-hand corner of each page, rather than to the CM/ECF document number and page.

as defined in 20 CFR 404.1567(b)." *See* Tr. 34. At step four, the ALJ found that Ms. Chapa was capable of performing her past relevant work as a daycare center director. *See* Tr. 38–39. Accordingly, the ALJ concluded Ms. Chapa was not disabled within the meaning of the Act. *See* Tr. 39.

Ms. Chapa subsequently requested that the Appeals Council review the ALJ's unfavorable decision. *See* Tr. 1, 185–87. On September 25, 2020, the Appeals Council denied the request for review. *See* Tr. 1–4. Therefore, the ALJ's decision became the Commissioner's final decision. *See Sims v. Apfel*, 530 U.S. 103, 106–07 (2000); 42 U.S.C. § 405(g). Ms. Chapa timely filed her appeal to this Court on November 23, 2020.[5] *See* Dkt. 1.

### III. <u>ANALYSIS</u>

Ms. Chapa raises a single issue on appeal. She argues the ALJ failed to properly assess the opinion of her treating pain management physician, Dr. David Keelen, M.D. *See* Dkt. 14 at 5–12. In particular, Ms. Chapa contends the ALJ erred in rejecting Dr. Keelen's opinion restricting Ms. Chapa to occasional handling of objects, occasional fine manipulation, and frequent reaching. *Id.* In response, the Commissioner contends the ALJ properly assessed the persuasiveness of Dr. Keelen's opinion in accordance with applicable regulations. *See* Dkt. 15 at 5–10. The Commissioner further argues that substantial evidence supports the ALJ's formulation of a RFC without any manipulative limitations. *Id.* For the reasons set forth below, the Court finds that Ms. Chapa's argument lacks merit and the ALJ's decision should be affirmed.

Ms. Chapa filed her application for DIB on March 14, 2018. *See* Tr. 81, 190–93. Therefore, the significantly revised regulations pertaining to medical opinion evidence apply to this case. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844 (Jan. 18,

---

[5] A claimant has sixty days to file an appeal. The sixty days begins running five days after the decision is mailed. 20 C.F.R. § 404.981; *see also* Tr. 3.

2017). For claims filed on or after March 27, 2017, all medical sources can provide evidence that is categorized and considered as medical opinion evidence and subject to the same standard of review. *See* 20 C.F.R. § 404.1520c ("How we consider and articulate medical opinions and prior administrative medical findings for claims filed on or after March 27, 2017."). Pursuant to the new regulations, the SSA "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. § 404.1520c(a).

The new regulation sets forth five factors the SSA will consider in evaluating medical opinions:

> (1) **Supportability**. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.
>
> (2) **Consistency**. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.
>
> (3) **Relationship with the claimant**. This factor combines consideration of the issues in paragraphs (c)(3)(i) through (v) of this section.
>
>> (i) Length of the treatment relationship. The length of time a medical source has treated you may help demonstrate whether the medical source has a longitudinal understanding of your impairment(s).
>>
>> (ii) Frequency of examinations. The frequency of your visits with the medical source may help demonstrate whether the medical source has a longitudinal understanding of your impairment(s).
>>
>> (iii) Purpose of the treatment relationship. The purpose for treatment you received from the medical source may help demonstrate the level of knowledge the medical source has of your impairment(s).
>>
>> (iv) Extent of the treatment relationship. The kinds and extent of examinations and testing the medical source has performed or

> ordered from specialists or independent laboratories may help demonstrate the level of knowledge the medical source has of your impairment(s).
>
> (v) Examining relationship. A medical source may have a better understanding of your impairment(s) if he or she examines you than if the medical source only reviews evidence in your folder.
>
> (4) **Specialization**. The medical opinion or prior administrative medical finding of a medical source who has received advanced education and training to become a specialist may be more persuasive about medical issues related to his or her area of specialty than the medical opinion or prior administrative medical finding of a medical source who is not a specialist in the relevant area of specialty.
>
> (5) **Other factors**. We will consider other factors that tend to support or contradict a medical opinion or prior administrative medical finding. This includes, but is not limited to, evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements. When we consider a medical source's familiarity with the other evidence in a claim, we will also consider whether new evidence we receive after the medical source made his or her medical opinion or prior administrative medical finding makes the medical opinion or prior administrative medical finding more or less persuasive.

20 C.F.R. § 404.1520c(c).

The new SSA regulations impose three "articulation requirements" when an ALJ considers medical opinion evidence. *See* 20 C.F.R. § 404.1520c(b). First, "when a medical source provides multiple medical opinion(s)," the ALJ need not articulate how he or she considered each individual medical opinion; rather, the ALJ "will articulate how [he or she] considered the medical opinions . . . from that medical source together in a single analysis." 20 C.F.R. § 404.1520c(b)(1). Second, while an ALJ must consider the factors when evaluating medical opinion evidence, *see* 20 C.F.R. § 404.1520c(c)(1)–(5), the ALJ is generally only required to articulate his or her consideration of two of those factors: supportability and consistency. 20 C.F.R. § 404.1520c(b)(2). Finally, if differing medical opinions are equally well-supported and consistent with the record, the ALJ must

7

then "articulate how [he or she] considered the other most persuasive factors . . . for those medical opinions." 20 C.F.R. § 404.1520c(b)(3).

As the ALJ noted in her decision, Ms. Chapa began seeing Dr. Keelen for pain management in July 2015, with regular follow-up visits thereafter usually at three-month intervals. *See* Tr. 38; *see also* Tr. 309 (July 10, 2015 visit to "establish care for persistent arm, hand, lower back and leg pain"). At the time of the August 27, 2019 hearing before the ALJ, Dr. Keelen had not provided an opinion regarding Ms. Chapa's functional limitations. *See* Tr. 49, 74. Three days after the hearing, Dr. Keelen completed a Physical Residual Functional Capacity Questionnaire (the "Questionnaire"). *See* Tr. 522–24. This opinion was subsequently added to the administrative record and considered by the ALJ in her decision. In the Questionnaire, Dr. Keelen described Ms. Chapa's physical impairments as follows: "Ms. Chapa has had multiple hand surgeries leading to development of CRPS Type 1. She has required multiple interventions and ongoing opioid medication management. Her condition has worsened over time resulting in marked functional decline." Tr. 524. Dr. Keelen opined that Ms. Chapa's impairments became disabling in August 2017. *Id.* As to specific functional limitations regarding use of her hands, Dr. Keelen opined that Ms. Chapa could frequently reach in all directions, occasionally handle objects, and occasionally use fine manipulation (fingers). *See* Tr. 523. Dr. Keelen also opined that Ms. Chapa could only occasionally lift/carry up to ten pounds due to "severe pain and functional limitation of hands." *Id.* Dr. Keelen indicated that Ms. Chapa's degree of pain was moderate, and he opined that Ms. Chapa would be off task due to pain and other symptoms, on average, approximately ten minutes per hour. *Id.* at 523–24. He also stated that Ms. Chapa would frequently need unscheduled breaks during the day, and that she would probably miss work two to three days per month due to her symptoms. *Id.* at 524. In addition, Dr. Keelen opined that in an eight-hour workday, Ms. Chapa:

8

(1) could sit for one hour, stand/walk for one hour, and lie down or recline for three hours; (2) could sit or stand for fifteen minutes at a time without needing to change position; and (3) would need to alternate between sitting and standing as needed/at will with ten minutes breaks in between to "walk it off" before resuming her previous activity. *Id.* at 522–23. Dr. Keelen explained that these limitations were due to "severe pain exacerbations greater than 3 times [per] day with constant underlying physical limitations and moderate baseline pain." *Id.* at 522. Finally, Dr. Keelen stated that the following objective clinical findings supported the limitations he assessed: decreased range of motion; MRI; EMG/NCV; tender points; muscle weakness; CT scan; edema; spinal deformity; decreased sensation; x-ray; and ambulation deficits. *Id.* at 523.

In her decision, the ALJ devoted nearly two pages to summarizing Dr. Keelen's treatment notes. *See* Tr. 35 (2017 and 2018 office visits); Tr. 36 (2018 and 2019 office visits). The ALJ then analyzed the persuasiveness of Dr. Keelen's opinion as follows:

> I very carefully considered Dr. Keelen's opinions expressed in his August 30, 2019, Physical Residual Functional Capacity form. However, I do not find any of his stated opinions persuasive. First, Dr. Keelen's clinical examination notes from November 2018 through May 2019 reflecting a normal gait, normal range of motion, normal spine alignment, and normal muscle strength do not provide supportability for the extreme limitations he outlined in the claimant's abilities to stand/walk and sit.
>
> Second, Dr. Keelen's clinical examination notes from March 2018 to May 2019 reflect no hand examination findings to support the limitations he outlined in the claimant's abilities to reach, handle, and finger or his stated rationale that the claimant has "functional limitation of hands."
>
> Third, Dr. Keelen's reaching, handling, and finger assessments are inconsistent with [consultative examiner] Dr. Laxminarayan's findings and observations of the claimant's normal upper extremity range of motion, normal bilateral handgrip, normal fine finger movements, intact handling abilities and intact buttoning abilities. I do not find evidence in Dr. Keelen's treatment notes of clinical findings of "decreased range of motion . . . EMG studies, tender points, muscle weakness, CT scan, edema, spinal deformity, decreased sensation, x-rays and ambulation deficits" cited in his Physical Residual Functional Capacity form.

9

> Finally, Dr. Keelen provided no cogent rationale for his calculations that the claimant needs to alternate between sitting, standing and "walk(ing) it off" for 10-minute periods, would be "off task" for 10 minutes every hour, would require unscheduled breaks during the workday "frequently," i.e. for 3 to 5 hours, and would miss work 2 to 3 days per month, leaving such opinions unsupported. I recognize that Dr. Keelen stated that the claimant's "condition has worsened over time resulting in marked functional decline". However, his examination notes do not reflect progressively worsening clinical findings; in fact, his clinical findings did not vary after November 2018.

*See* Tr. 37 (internal citation omitted).

Ms. Chapa contends the ALJ failed to give due consideration to Dr. Keelen's opinion. The Court disagrees and finds that the ALJ did not commit legal error. The new regulations required the ALJ to articulate how she considered the factors of supportability and consistency. 20 C.F.R. § 404.1520c(b)(2). The ALJ thoroughly discussed the supportability of Dr. Keelen's opinion. She initially determined that Dr. Keelen's opinion was not supported by his treatment notes. *See* Tr. 37 (finding Dr. Keelen's "clinical examination notes from November 2018 through May 2019 reflecting a normal gait, normal range of motion, normal spine alignment, and normal muscle strength" did not support the "extreme limitations" he outlined regarding Ms. Chapa's abilities to stand/walk and sit); *id.* (finding Dr. Keelen's "clinical examination notes from March 2018 to May 2019 reflect[ed] no hand examination findings to support the limitations he outlined" regarding Ms. Chapa's abilities to reach, handle and finger). The ALJ also found that nearly all of the clinical findings Dr. Keelen marked as present in the Questionnaire were not supported by his treatment notes. *Id.* ("I do not find evidence in Dr. Keelen's treatment notes of clinical findings of 'decreased range of motion . . . EMG studies, tender points, muscle weakness, CT scan, edema, spinal deformity, decreased sensation, x-rays and ambulation deficits.'"). Next, the ALJ found Dr. Keelen's opinion that Ms. Chapa's condition had worsened over time was unsupported by his treatment notes, which showed no such decline in her condition. *See* Tr. 37 ("[Dr. Keelen's]

examination notes do not reflect progressively worsening clinical findings; in fact, his clinical findings did not vary after November 2018."). In addition, the ALJ found that certain limitations Dr. Keelen assessed were entirely unexplained and unsupported by his treatment records. *See* Tr. 37 (determining that "Dr. Keelen gave no cogent rationale for his calculations that the claimant needs to alternate between sitting, standing and 'walk(ing) it off' for 10-minute periods, would be 'off task' for 10 minutes every hour, would require unscheduled breaks during the workday 'frequently,' i.e. for 3 to 5 hours, and would miss work 2 to 3 days per month"). In addition to the supportability factor, the ALJ also addressed the consistency of Dr. Keelen's opinion with other record evidence, namely consultative examiner Dr. Amarnath Laxminarayan, M.D.'s findings. *See* Tr. 37 (finding that Dr. Keelen's "reaching, handling, and finger assessments are inconsistent with Dr. Laxminarayan's findings and observations"). Finally, as the Commissioner points out, the ALJ also considered another factor—Dr. Keelen's treating relationship with Ms. Chapa—when the ALJ stated that the RFC was supported by the conservative nature of Ms. Chapa's medical treatment:

> [Ms. Chapa's] medical treatment since her alleged onset date in August 2017 has been conservative in nature. She has had no surgical procedures. She has had no inpatient hospitalizations for pain management. She has made no urgent emergency room visits for acute exacerbation of pain. She has not engaged in physical therapy or other rehabilitative activities. She has simply seen pain management specialist Keenan [sic] at three-month intervals for narcotic pain medication that she began taking by at least July 2015.

Tr. 38 (internal citation omitted). Based on the foregoing, the Court concludes there was no legal error in the ALJ's analysis of Dr. Keelen's opinion under the factors. *See, e.g.*, *Webster v. Kijakazi*, 19 F.4th 715, 719 (5th Cir. 2021) (holding the ALJ properly applied the relevant legal standards by considering "both the consistency and supportability of Dr. Small's testimony in light of other medical opinions and evidence in the record").

11

Ms. Chapa's arguments to the contrary are not meritorious. Ms. Chapa initially takes issue with the ALJ's determination that the objective clinical findings Dr. Keelen listed in the Questionnaire were unsupported by his treatment notes. *See* Dkt. 14 at 7. Ms. Chapa argues that the administrative record "contains numerous reports regarding surgery performed" on her hands, treatment notes reflecting "swelling, pain, tenderness, Bouchard's nodes, and decreased range of motion," and x-rays showing right hand osteoarthritis. *Id.* The record citations by Ms. Chapa are to records from other providers, none of whom submitted a medical source opinion regarding Ms. Chapa's functional limitations. *Id.* (citing to Dr. Kent Dickson, M.D.'s treatment notes). In any event, Ms. Chapa's argument overlooks what the ALJ actually found, which was that Dr. Keelen's treatment notes did not contain many of the objective clinical findings he marked in the Questionnaire, thereby leaving that portion of his Questionnaire unsupported. In her briefing, Ms. Chapa does not point to any specific treatment record from Dr. Keelen containing the objective clinical findings he noted in the Questionnaire. *See* Dkt. 14 at 7 (citing only to Dr. Keelen's notes of what Ms. Chapa was diagnosed with, and not to any actual clinical or physical exam findings he made). The Court also notes that Ms. Chapa's briefing does not point to any error in the ALJ's lengthy summary of Dr. Keelen's treatment records. Consequently, the Court perceives no error in the ALJ's analysis of the supportability of Dr. Keelen's opinion.

Next, Ms. Chapa emphasizes that in rejecting Dr. Keelen's opinion, the ALJ "had no other evidence which would establish the frequency with which" Ms. Chapa could use her hands for reaching, handling and fingering. *See* Dkt. 14 at 7; *see also id.* at 11 ("[H]aving rejected the opinion of the treating physician [Dr. Keelen], the ALJ admitted that there was no basis for her conclusion that [Ms. Chapa] did not have manipulative limitations."). This argument also lacks merit because Dr. Keelen's opinion was not the only medical source opinion in the record. In fact, the ALJ

considered two other medical source reports in the record, neither of which found that Plaintiff had any manipulative limitations. *See* Tr. 37 (evaluating the reports of a state agency medical consultant and consultative examiner Dr. Laxminarayan). The ALJ found these reports to be persuasive and consistent with each other. *See id.* In particular, the ALJ determined:

> In assessing the claimant's physical residual functional capacity, I found persuasive the prior administrative findings of State agency medical consultant Nancy Armstrong, M.D. that the claimant can lift/carry at least 10 pounds occasionally, stand/walk for at least 2 hours and sit for 6 hours during an 8-hour workday. Dr. Armstrong's opinions are persuasive because they are well supported by her review of consultative examiner Laxminarayan's April 2018 findings, July 2018 hand x-rays, and Dr. Keelen's June 2018 clinical examination notes. Furthermore, her opinions are persuasive because she is a duly qualified physician and an expert in disability evaluation by virtue of their experience as State agency medical consultants.
>
> I find that any limitations arising from the claimant's history of surgical screw arthrodesis of left and right distal interphalangeal joints are accommodated by lifting/carrying restrictions to only 10 pounds occasionally. Dr. Laxminarayan's hand and finger findings in April 2018, less than one year after the alleged onset date, provide supportability for my finding.

*See* Tr. 37 (internal citation omitted).[6] In her briefing, Ms. Chapa does not argue that the ALJ erred with respect to her evaluation of either Dr. Laxminarayan's consultative exam or the state agency medical consultant's report.

To reiterate, the ALJ properly considered the evidence in the record and made a finding that differed from the manipulative limitations assessed by Dr. Keelen. Doing so was not error.

---

[6] The ALJ also thoroughly reviewed Dr. Laxminarayan's consultative examination findings. With regard to upper extremities in particular, the ALJ noted:

> Dr. Laxminarayan's right upper extremity examination revealed no joint tenderness or enlargement and normal range of motion, except he noted the claimant could not flex her distal interphalangeal joints. Similarly, his left upper extremity examination revealed no joint tenderness or enlargement and normal range of motion, except he again noted the claimant could not flex her distal interphalangeal joints. He found normal handgrip bilaterally with no signs of fasciculation or atrophy and characterized the claimant's fine finger movements as "normal." He indicated that the claimant had the ability to handle small objects and button clothing.

*See* Tr. 35 (internal citation omitted).

"[T]he ALJ is not required to incorporate limitations in the RFC that he or she did not find to be supported by the record." *See McCamant v. Comm'r, SSA*, No. 4:20-cv-212, 2021 WL 3603462, at *8 (E.D. Tex. Aug. 13, 2021) (finding the ALJ did not err in finding treating physician's assessed limitations to be unpersuasive, and instead finding persuasive the opinions of state agency medical consultants, neither of whom found the claimant had any manipulative limitations); *see also Fleming v. Saul*, No. SA-19-cv-701, 2020 WL 4601669, at *7 (W.D. Tex. Aug. 10, 2020) ("Although the ALJ did not adopt in its entirety any one medical opinion of record in fashioning his RFC, he also did not completely reject every opinion either. Instead, the ALJ properly evaluated all of the medical opinions in the record (none of which arose out of a treatment relationship) in accordance with the Section 404.1520c's more flexible methodology for analyzing opinion evidence and exercised his discretion to resolve conflicts in the evidence to assess the RFC based on all the relevant evidence in the record." (citing *Taylor v. Astrue*, 706 F.3d 600, 602–03 (5th Cir. 2012))). In sum, because Ms. Chapa has not shown legal error or a lack of substantial evidence, the Court finds no error in the ALJ's consideration of Dr. Keelen's opinion.

Lastly, in her reply brief, Ms. Chapa suggests that it was error for the ALJ to find several hand-related impairments to be severe at step two, but then fail to include any manipulative limitations in the RFC. *See* Dkt. 16 at 5. Notwithstanding the fact that Ms. Chapa failed to raise this argument until her reply brief, the Court finds the argument lacks merit. In *Stone v. Heckler*, 752 F.2d 1099 (5th Cir. 1985), the Fifth Circuit described the threshold for a severe impairment.

> Phrased in the negative, an 'impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience.'

*See Keel v. Saul*, 986 F.3d 551, 555 (5th Cir. 2021) (quoting *Stone*, 752 F.2d at 1101). "Re-stated, an impairment is severe if it is anything more than a slight abnormality that would not be expected

14

to interfere with a claimant's ability to work. Th[e] second step [of the sequential evaluation process] requires the claimant to make a *de minimis* showing." *See Salmond v. Berryhill*, 892 F.3d 812, 817 (5th Cir. 2018) (internal quotation marks and citation omitted). "Satisfying the *Stone* test of severity means only that claimant has passed the second step of the inquiry mandated by the regulations." *Shipley v. Sec'y of Health & Hum. Servs.*, 812 F.2d 934, 935 (5th Cir. 1987). "A claimant is not entitled to Social Security disability benefits merely upon a showing that (s)he has a severe disability. Rather, the disability must make it so that the claimant cannot work to entitle the claimant to disability benefits." *Gutierrez v. Barnhart*, No. 04-11025, 2005 WL 1994289, at *9 (5th Cir. 2005). The consideration of whether an impairment is severe at step two is altogether different than the RFC inquiry at step four. *Id.*; *see also Boyd v. Apfel*, 239 F.3d 698, 706 (5th Cir. 2001). Thus, Ms. Chapa has not demonstrated error simply because the RFC did not incorporate specific limitations for every identified severe impairment.

## IV.   RECOMMENDATION

For the foregoing reasons, the Court recommends that the Commissioner's decision be **AFFIRMED**.

Within fourteen (14) days after service of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(C).

A party is entitled to a *de novo* review by the district court of the findings and conclusions contained in this report only if specific objections are made, and failure to timely file written objections to any proposed findings, conclusions, and recommendations contained in this report shall bar an aggrieved party from appellate review of those factual findings and legal conclusions accepted by the district court, except on grounds of plain error, provided that the party has been

served with notice that such consequences will result from a failure to object. *Id.*; *Thomas v. Arn*, 474 U.S. 140 (1985); *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten (10) to fourteen (14) days).

**So ORDERED and SIGNED this 1st day of August, 2022.**

_____
KIMBERLY C. PRIEST JOHNSON
UNITED STATES MAGISTRATE JUDGE